**CENTRAL FREIGHT LINES, INC., Petitioner-Cross Respondent,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

No. 81–4177
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1982.

Fulbright & Jaworski, T. J. Wray, Houston, Tex., for Central Freight Lines, Inc.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D. C., for N.L.R.B.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This labor dispute grew out of an organizational campaign launched by the International Association of Machinists and Aerospace Workers, AFL–CIO, (Union) at the Dallas and Fort Worth terminals of Central

Freight Lines (Central). After an earlier effort to organize the company failed, several Central employees began cooperating with the Union to try again to promote the Union's election as bargaining representative for the previously unorganized Central work force. The campaign encountered resistance from Central's management. In 1979 upon complaint of the Union, the National Labor Relations Board (the Board) found that Central had violated sections 8(a)(1) and (3) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(1), 158(a)(3), by discharging two union supporters at the Dallas terminal because of their organizational activities. *See Central Freight Lines, Inc.*, 246 N.L.R.B. No. 13 (1979), *enforced*, 624 F.2d 1301 (5th Cir. 1980). In a separate action, the Board found Central to have committed similar violations at its Beaumont terminal. *See Central Freight Lines, Inc.*, 250 N.L.R.B. No. 63 (1980), *modified*, 653 F.2d 1023 (5th Cir. 1981).

While those cases were in litigation, the Union subsequently brought the two additional charges here at issue. In brief, the Union alleged that Central had again violated section 8(a)(1) of the Act in October and November of 1978 by coercively interrogating employees about their union activities, by threatening that a loss of jobs would follow a certification of the Union as bargaining agent, and by promising increased benefits, all of this in an effort to dampen organizational enthusiasm. It also claimed that Central violated sections 8(a)(1) and (3) by discharging four employees because of their union activities, Billy Hudson, Keiller Davis, and George Southerland in November 1978 and Stewart Jones in March 1979. There was a further charge of discrimination against the Union in suspending Douglas Higgins in July 1979. The administrative law judge who heard the consolidated cases in June and October of 1979 filed a detailed opinion upholding each of the Union's allegations. Central appealed to the Board, which, after a careful review of the record, adopted the findings and conclusions of the administrative law judge, with one exception: it found no pri-

ma facie case to support the conclusion that Central had fired George Southerland for union activity rather than for its professed reason of absenteeism. *See Central Freight Lines, Inc.*, 225 N.L.R.B. No. 56 (1981). Central now petitions this Court for relief from the Board's order, arguing that the record does not bear out the Board's findings. Having reviewed the administrative law judge's opinion, the Board's order, and the lengthy record upon which they are based, we enforce the Board's order in full.

As usual, we note at the outset that our power to review determinations by the Board is limited. We must sustain the Board's findings if they are supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965); *Mueller Brass Co. v. NLRB*, 544 F.2d 815, 817 (5th Cir. 1977). We may not displace the Board's choice between two conflicting views of the facts, even though we might have chosen differently had the case been before us *de novo*. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Aero Corp.*, 581 F.2d 511, 514 (5th Cir. 1978). Finally, it is important in this case to stress that "[c]redibility resolutions are peculiarly within the province of the trial examiner and the National Labor Relations Board and are entitled to affirmance unless inherently unreasonable or self-contradictory." *NLRB v. Proler International Corp.*, 635 F.2d 351, 355 (5th Cir. 1981).

We turn first to the allegation that Central supervisors improperly threatened employees with reduced work or discharges, promised increased benefits, and cooercively interrogated employees about their union activity. There is substantial evidence in the record to support the Board's factual conclusions. Most of the evidence in this record came to the Board in the form of conflicting testimony. The administrative law judge heard this testimony and was in the best position to evaluate the credibility of each witness. The Board's decision to credit the employees' versions of the inci-

dents in question, based upon the findings of the administrative law judge, was in the well-established exercise of the factfinder's prerogative.

Central's attempt to attack these findings as based upon inadequate reasoning or upon statements taken out of context does not find sufficient support in the record to necessitate substitution of our judgment for that of the Board. For example, Central insists that the Board erred in relying on Billy Hudson's account of the employee meeting at which supervisor Ken Ashmore made the alleged threats and promises. According to Central, the record shows that Hudson had "no recall" of Ashmore's remarks on the danger of future cutbacks. What the record actually shows, however, is that Hudson did not recall whether Ashmore's comments on the potential effect of unionization on jobs at Central were made in connection with his remarks on Brown Express, a competitor that apparently had suffered some cutbacks after its employees organized. Hudson was certain, nevertheless, that Ashmore had raised the possibility of cutbacks at some point during the meeting. In response to questioning by Central's counsel, Hudson recalled the meeting as follows:

A. He [Ashmore] stated that people that were full time—if we went Union, people full time—most of them would be part time or would not have jobs at all. That's what he said.

Q. Did he say that this could happen?

A. Yes, sir, he said this could happen.

Q. Because the Union could put restrictions on?

A. He didn't say because the Union could put restrictions on.

Q. Did he say it could happen because of Union restrictions or how did he put it?

A. He said, and I quote again—I don't say he quoted this way. He said, "some of you full time persons could be part-timers and some of you would not have jobs at all." That is not a direct quote from him.

Q. Isn't it a fact that exactly what the man said is "If we had been like Brown Express, many of us here today, including myself, might not have jobs"?

A. No, sir.

Q. You deny that is what he said?

A. I deny it.

"Section 8(a)(1) is violated if, under the totality of the circumstances, 'the employees could reasonably conclude that the employer is threatening economic reprisals if they support the Union.'" *TRW-United Greenfield Division v. NLRB*, 637 F.2d 410, 418 (5th Cir. 1981) (*quoting Hendrix Manufacturing Co. v. NLRB*, 321 F.2d 100, 105 (5th Cir. 1963)). Read against the background of this record, Hudson's account, if believed, supports an inference that Ashmore's remarks constituted an implicit threat of economic reprisal rather than a permissible prediction of demonstrably probable consequences beyond Central's control. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969). Thus, we find that the Board acted on substantial evidence in finding Central had violated section 8(a)(1) of the Act through the public comments of its supervisor.

Similarly, the record adequately supports the Board's findings that supervisors Ashmore and Van Aldridge improperly interrogated Hudson, and that supervisor Cunningham improperly questioned another employee, Jones, about their union activities. "Whether a particular instance of interrogation reasonably tended to coerce employees is determined in light of the totality of the circumstances in which the interrogation occurred." *NLRB v. Laredo Coca Cola Bottling Co.*, 613 F.2d 1338, 1352 (5th Cir. 1980), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). Central's demonstrated antipathy to unionization and its discharge, shortly after the alleged interrogations, of both Hudson and Jones do not lend credence to its portrayal of these incidents as harmless exchanges.

Moving to the discharges of Hudson, Davis, and Jones and the suspension of Higgins, we find in the record sufficient evidence to form the basis for the finding

that hostility toward the Union was at least a prime motivation of these actions. To examine briefly the discharge of Stewart Jones, one of the closer cases, we note the administrative law judge's admission that "Jones was not a model employee." Evidence suggests that Jones' supervisors suspected him of mistreating the clutches in his trucks and carelessly arranging his freight. Moreover, several customers had complained about Jones' work. As the Board properly indicated in relieving Central from liability for the discharge of Southerland, an employee's union activity does not immunize him from discipline or discharge.

What led the Board to conclude that a violation lay beneath the pretext for Jones' dismissal, however, was Central's timing. The catalogue of faults produced by Central against Jones stretched back several years. Yet it was not until shortly after supervisors observed him actively promoting the Union that management terminated Jones at last. Indeed, the Board could not but view with suspicion the circumstances in which each of these discharges occurred. The evidence amply suggests that Central had a history, if not a policy, of suffering the minor infractions of these experienced employees—until the union ferment began. By contrast, less outspoken employees with comparably blemished records remained on the payroll.

The Board's refusal to order reinstatement of Southerland who was discharged for excessive absenteeism demonstrates its sensitivity to the managerial complaint that discipline must prevail, even during organizational campaigns. A mere pretext for discipline, however, cannot deflect the Board's scrutiny. "[T]he Board is not required to establish substantial evidence that conduct is motivated solely by anti-union animus. It is sufficient if substantial evidence shows that the force of anti-union purpose was 'reasonably equal' to the lawful motive prompting conduct." *NLRB v. Aero Corporation*, 581 F.2d at 514. As we stated before in upholding sanctions against

Central, "Even assuming that petitioner's asserted reasons for the discharges were not solely pretextual, the record as a whole contains sufficient substantial evidence that the challenged discharges were motivated by an anti-union purpose." *Central Freight Lines, Inc. v. NLRB*, 624 F.2d at 1302. Thus, the Board again has satisfied its burden under our limited scope of review, and its order must be

ENFORCED.