**CENTRAL FREIGHT LINES, INC.,**
**Petitioner, Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent, Cross**
**Petitioner.**

No. 80–1836.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 21, 1981.

Fulbright & Jaworski, A. J. Harper, II, L. G. Clinton, Jr., Brian S. Greig, Houston, Tex., for petitioner.

Elliott Moore, Deputy Assoc. Gen. Counsel, Charles P. Donnelly, N. L. R. B., Washington, D. C., for respondent.

Louis V. Baldovin, Jr., Dist., Direct., NLRB, Region 23, Houston, Tex., for other interested parties.

Before MARKEY,* Chief Judge, and GEE and POLITZ, Circuit Judges.

MARKEY, Chief Judge:

Central Freight Lines, Inc. (Company) petitions to review, and the National Labor Relations Board (board) cross-petitions to enforce, the board's order of July 7, 1980. The board found that Company engaged in a number of acts violating Section 8(a)(1) of

* Of the U. S. Court of Customs and Patent Appeals, sitting by designation.

the National Labor Relations Act (Act), and discharged Thomas Sessions for Union activities in violation of Section 8(a)(3) of the Act. We modify.

*Introduction*

Nine witnesses testified at a hearing before an administrative law judge (ALJ) on May 30 and 31, 1979. Sharp conflicts in testimony make crucial in this case the ALJ's evaluation of the demeanor and credibility of witnesses. The board, in a 2–1 decision, affirmed the ALJ's findings of violations of Section 8(a)(1) and reversed the ALJ's finding of no violation of Section 8(a)(3). Our review is limited to a determination of whether the findings of the board majority are supported by substantial evidence on the record as a whole. Section 10(e) of the Act. *N. L. R. B. v. Moore Business Forms, Inc.*, 574 F.2d 835, 843 (5th Cir. 1978).

## I.

*Section 8(a)(1)*

A. *Supervisory Status of Martin*

■ The finding that Martin was not a supervisor within the meaning of Section 2(11) of the Act is supported by substantial evidence. His duties were merely routine, requiring no independent judgment.

It is apparent from Martin's testimony that he had none of the powers listed in Section 2(11) as indicia of supervisory status, such as power to hire, fire, or discipline employees, powers exercised here by Martin's superior, the dock foreman. Martin's duties consisted of: (1) determining the size and destination of outbound shipments; (2) determining the available space in trailers; and (3) loading the trailers himself or with help from other dockmen. His only exercise of judgment was in distributing dockmen among available trailers for loading. As the ALJ said: "If a trailer fills up, then another trailer is loaded".

Like other dock employees, Martin spent most of his time engaged in manual labor, and was paid only 5 cents per hour more than the others.

■ Contrary to Company's assertion, the board was not required to defer to conclusory testimony of others (Domino and Anderpont) that Martin's duties were identical to those of supervisor Anderpont. The board properly accepted the view of the ALJ, who observed the demeanor of the witnesses. As stated by the ALJ:

> I found Martin's description of the work which he had actually performed for the [Company], and Martin's description of his own duties and authority to be more reliable than the testimony offered by others.

B. *Due Process*

■ Company asked for dismissal of these proceedings, arguing that an investigatory interview of Martin denied at due process because examiner Brown took an affidavit from "supervisor" Martin, treating him as an employee, without contacting Company's attorney.

Because we uphold the finding that Martin was not a supervisor within the meaning of Section 2(11), it follows that there was no impropriety in the investigation, and the ex post facto administrative inquiry into the investigation occasioned by Company's motion to quash the complaint is irrelevant to the outcome of this litigation.

C. *Domino-Martin Conversation*

■ Substantial evidence supports the finding that Domino told Martin in October, 1978, to refrain from participating in Union activities and to "remain neutral". Martin having been an employee with a full Section 7 right to participate in Union activities, not a supervisor within the meaning of Section 2(11), we affirm the board's finding that Company is liable for an unfair labor practice under Section 8(a)(1) because of Domino's instructions to Martin.

D. *The Barthell Affidavit*

Over Company's objection, General Counsel introduced at trial the Barthell affidavit, concerning a conversation between Domino and Barthell in August, 1978.

Barthell, a former Company employee, was deceased at the time of trial.

■ In admitting the affidavit, the ALJ relied on Fed.R.Evid. 804(b)(5), the residual exception to the hearsay rule. For that Rule to apply, however, an extra-judicial statement must have circumstantial guarantees of trustworthiness equivalent to those listed in the Rule at 804(b)(1)–(4): former testimony, belief of impending death, statement against interest, and personal or family history.

There is no evidence that Barthell had a belief in impending death. Nor is there evidence that the Barthell affidavit had any equivalent guaranty of trustworthiness of any kind. Indeed, it was written by examiner Brown and merely signed by Barthell. As stated in *Workman v. Cleveland-Cliffs Iron Co.*, 68 F.R.D. 562, 565 (N.D.Ohio 1975): "The Court is well aware of the subtle shifts in meaning that can occur when one's statement is recorded by another."

■ Unless application of Rule 804(b)(5) be limited to circumstances evidencing a clear basis of trustworthiness, exceptions to the rule against hearsay could swallow the rule. Because there were no such circumstances here, the board erred as a matter of law in relying on the Barthell affidavit to support a finding that the Company violated Section 8(a)(1) because of a Domino-Barthell conversation. Paragraph 1(b) of the board's order depends entirely, and paragraph 1(c) thereof depends in part, on the Barthell affidavit. The former must therefore be deleted and the latter amended.

### E. *Solicitation Policy*

Paragraph 7(g) of the complaint alleges that Domino "orally announced and enforced at [Company's] plant a no-solicitation rule which prohibited the employees from soliciting for the Union on [Company's] premises at any time". However, the testimony of Sessions, witness for the General Counsel, does not support that allegation. According to Sessions, Domino held a meeting on the dock in mid-November, 1978, saying "I would prefer that [solicitation] be contained to your lunch breaks, your coffee breaks and before and after work. I don't want to see it any more on this dock during company work hours." Consistent with Sessions' testimony, Domino testified that the rule was not a blanket prohibition of solicitation for Union on Company premises.

■ Hence the board's position that the rule was too broad is unsupported in the record. Company's no-solicitation rule, being restricted to work areas and work time, was valid on its face. *Republic Aviation Corp. v. N. L. R. B.*, 324 U.S. 793, 803 n. 10, 65 S.Ct. 982, 988 n. 10, 89 L.Ed. 1372 (1945); *Custom Recovery v. N. L. R. B.*, 597 F.2d 1041, 1044 (5th Cir. 1979).

The board says there were sports pools and a flower fund box, with no Company rule prohibiting them. It contrasts those activities with a rule forbidding union solicitation. There is, however, no evidence that the sports pool and flower fund activities had a potential for interference with work substantially equivalent to that of union solicitations. Moreover, the complaint charged the Company with promulgating an overbroad rule prohibiting solicitation "at any time", not with failure to prohibit other activities. As indicated the record fails to support the charge in the complaint.

That the no-solicitation rule was announced coincidentally with a union organizational effort does not alone taint its adoption with a discriminatory purpose. If such rules are to be established, the time of an organizational effort is the logical time for their announcement. *TRW, Inc. v. N. L. R. B.*, 393 F.2d 771, 774 (6th Cir. 1968).

Because the solicitation rule did not constitute the violation charged, paragraphs 1(e) and 2(a) of the board's order must be deleted.

### F. *Remaining Board Determinations Under Section 8(a)(1)*

Substantial evidence on the record as a whole supports the remaining Section 8(a)(1) violation determinations based on:

 

(1) Domino's interrogation of Crumpler in Domino's office in August, 1978; (2) Domino's interrogation of Sessions in Domino's office in August and in·November, 1978; and (3) Anderpont's interrogation of Saurage on the dock in August, 1978.

## II.

### Sessions' Discharge

Sessions, a truck driver and a leader in the union's organizational effort, incurred three chargeable traffic accidents in four months. Pursuant to its policy of discharging drivers after three chargeable accidents in 12 months, the Company discharged Sessions.

Notwithstanding Session's driving record, the board majority found that Company violated Section 8(a)(3) by discharging him because of union activities. We cannot agree.

■ We review the board's findings, but where its findings conflict with those of the ALJ, the record, including the ALJ's report, must be subjected to particular scrutiny. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951). *N. L. R. B. v. Florida Medical Center, Inc.*, 576 F.2d 666, 674 (5th Cir. 1978).

■ The record supports the ALJ's findings that: (1) Company established a stricter enforcement policy toward accidents when Domino became terminal manager in February, 1977; and (2) Domino announced the new policy to employees at a meeting in January, 1978, months before Union appeared on the scene. Company drivers including Sessions, knew the policy. There is no evidence of disparate treatment, Sessions being the first and only driver to violate the three-accident rule after Domino announced the new policy. That others had not been discharged for accidents before Domino's announcement is of no moment. Similarly, that other drivers were not discharged, following the announcement, is of no moment when, as here, those drivers had

incurred less than three accidents subsequent to the advent of the new policy.

In finding a violation, the board majority thus speculated that Company had a discretionary motive in discharging Sessions and usurped Company's prerogative to enforce strictly its accident policy. Hence paragraphs 1(f), 2(b), and 2(c) of the board's order must be deleted.

### Conclusion

We modify the board's order,* deleting paragraphs 1(b), 1(e), 1(f), 2(a), 2(b), and 2(c), and amending paragraph 1(c) to read: "Creating the impression of surveillance of its employees' Union activities by telling an employee that his truck had been observed outside a Union meeting." We expect that the board will appropriately amend the "Notice to Employees" to be posted at Company's Beaumont plant.

MODIFIED, AND AS MODIFIED, ENFORCED.

---

* The board added paragraphs 1(f), 2(b), and 2(c) to the ALJ's order. We have designated the resultant combination "the board's order".