NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

UNITED SANITATION SERVICE, DIVISION OF SANITAS SERVICE CORPORATION, Respondent.

No. 83–3194.

United States Court of Appeals,
Eleventh Circuit.

July 26, 1984.

Elliott Moore, Deputy Associate Gen. Counsel, Paul Bateman, N.L.R.B., Washington, D.C., for petitioner.

G. William Baab, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for amicus curiae Southern Conference of Teamsters.

Herbert B. Mintz, W. Russell Hamilton, Miami, Fla., for respondent.

Before GODBOLD, Chief Judge, TJOFLAT and HENDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

The National Labor Relations Board ("Board") petitions for enforcement of an order directed against United Sanitation Services, Division of Sanitas Service Corporation ("Company") for violations of sec-

tions 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3) ("Act").

After reviewing the findings of the Administrative Law Judge ("ALJ"), the Board concluded that the Company engaged in certain unfair labor practices before, during and after an employee representation election in Miami, Florida. The Board specifically found that the Company urged its employees to report pressure tactics by union organizers in their efforts to secure signature cards, asked employees if they had been invited by union agents to join the union, requested employees to report to management the names of fellow workers who attended union meetings, threatened to discharge employees in retaliation for their pro-union sentiments or activities, warned employees they would be fired if they engaged in a strike, and informed employees that management maintained a list of pro-union employees. The Board also found that the Company violated sections 8(a)(3) and (1) of the Act by dismissing Terry Lee because of his purported union activity. The Board maintains that this conduct interfered with the rights of the employees to organize for the purpose of collective bargaining in violation of Section 7 of the Act. 29 U.S.C. § 157.

The Board ordered the Company to cease and desist from engaging in these alleged unfair labor practices and from interfering with, restraining or coercing employees in the exercise of their rights guaranteed by section 7 of the Act. Affirmatively, the Board ordered the Company to pay to the estate of Terry Lee, who died on February 21, 1981, the monetary value of any loss of earnings that he may have suffered by virtue of his alleged discriminatory discharge, together with interest, and to post an appropriate notice.

In this enforcement proceeding, the Company challenges four of the Board's findings. It denies that it unlawfully (1) threatened to fire those employees who engaged in union activities, (2) threatened to discharge striking employees, (3) interrogated employees in an effort to determine if union agents invited them to join the union, and (4) discharged employee Terry Lee for his union activities.[1]

The first two issues raised by the Company do not require detailed analysis. There was substantial evidence supporting the Board's determination. In our review of the Board's decision, we are bound by the Board's factual determinations if they are supported by substantial evidence on the record considered as a whole. *Weather Tower v. NLRB*, 676 F.2d 483, 487 (11th Cir.1982). If the Board has made a "plausible inference from the evidence, this court may not overturn its findings, although if deciding the case de novo, the court might have made contrary findings." *Id.*, citing *Sturgis Newport Business Forms, Inc. v. NLRB*, 563 F.2d 1252, 1256 (5th Cir.1977).[2]

These allegations of error essentially attack credibility determinations of the Administrative Law Judge. The former Fifth Circuit Court of Appeals has consistently held that credibility resolutions are peculiarly within the province of the ALJ and the Board and are entitled to deference unless inherently unreasonable or self-contradictory. *See, e.g., NLRB v. Proler International Corp.*, 635 F.2d 351, 355 (5th Cir.1981); *NLRB v. Standard Forge and Axle Co.*, 420 F.2d 508, 510 (5th Cir.1969), *cert. denied*, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 140 (1970). Nothing in the record suggests that the ALJ's determinations were either unreasonable or self-contradictory.

The Company's third contention—that it did not unlawfully interrogate em-

---

1. The Company does not take issue with the Board's findings with respect to the remaining charges. These findings are entitled to summary affirmance. See *NLRB v. Jacob E. Decker and Sons*, 569 F.2d 357, 360 (5th Cir.1978); *The Riverside Press v. NLRB*, 415 F.2d 281, 285 (5th Cir.1969), *cert. denied*, 397 U.S. 912, 90 S.Ct. 915, 25 L.Ed.2d 94 (1970).

2. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

ployees—cannot be dismissed on mere substantial evidence grounds. Subsequent·to the Board's decision in this case, it adopted a new standard on the issue of unlawful interrogations in *Rossmore House*, 269 NLRB No. 198, 116 LRRM 1025 (1984).[3] The Company contends that were the Board to reconsider the facts of this case in light of *Rossmore House* it would not find the Company guilty of illegal interrogation and would accordingly modify the scope of the order and notice. Although we do not intimate an opinion as to the outcome, we believe that reconsideration of the interrogation issue is necessary and therefore vacate and remand such portions of the Board's findings and order as specifically relate to this issue.[4]

The company finally urges that employee Terry Lee was discharged for legitimate reasons. This is an attack not only on the ultimate conclusion reached by the Board, but also on the admissibility of key evidence relied upon by the General Counsel in proving the reason for the discharge.

■ It is well settled that the discharge of an employee because of his or her union organizing efforts or other protected activity constitutes a violation of sections 8(a)(3) and (1) of the Act. *See generally, NLRB v. Southern Plasma Corp.*, 626 F.2d 1287 (5th Cir.1980); *NLRB v. Garland Knitting Mills*, 408 F.2d 672, 673 (5th Cir.1969). The question of an employer's motivation in section 8(a)(3) cases

is a question of fact to be resolved by the Board from a consideration of all the evidence. *NLRB v. Southern Plasma Corp.*, 626 F.2d at 1294.

■ The Board established guidelines for the determination of true employer motivation in *Wright Line, a Division of Wright Line*, 251 NLRB 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982),[5] which mandates three phases of proof. First, the General Counsel must show by a preponderance of the evidence that a protected activity was a motivating factor in the employer's decision to discharge an employee. Such a showing establishes a section 8(a)(3) violation unless the employer can show as an affirmative defense that it would have discharged the employee for a legitimate reason regardless of the protected activity. The General Counsel may then offer evidence that the employer's proffered "legitimate" explanation is pretextual—that the reason either did not exist or was not in fact relied upon—and thereby conclusively restore the inference ·of unlawful motivation.

In the instant case, the Board concluded that the General Counsel sustained his initial burden of showing that Terry Lee's union activities were a motivating factor in the Company's decision to terminate his services. The Company responded by prof-

---

**3.** In *Rossmore House* the Board overruled a line of cases "to the extent they find that an employer's questioning [of] open and active union supporters about their union sentiments, in the absence of threats or promises, necessarily interferes with, restrains, or coerces employees in violation of Section 8(a)(1) of the Act." 116 LRRM 1025, 1027.

**4.** Other than the question of the applicability of *Rossmore House*, there is no merit to the company's general allegations of error respecting the interrogation of its employees.

We also reject the Company's argument that the Board's finding of unlawful interrogation is flawed because no such violation was alleged by the General Counsel or considered at the hearing. The Company had notice that the issue would be considered and it was fully litigated at the hearing. It is well settled that "[i]nconse-

quential or technical variances between the phraseology or characterization of the violation charged and the violation found are not a valid defense where it is clear that respondent 'understood the issue and was afforded full opportunity to justify [its action]' ..." (citation omitted). *Soule Glass and Glazing Co. v. NLRB*, 652 F.2d 1055, 1074 (1st Cir.1981), *quoting NLRB v. Mackay Radio and Telegraph Co.*, 304 U.S. 333, 350, 58 S.Ct. 904, 913, 82 L.Ed. 1381, 1392 (1938). *See also Texas Industries, Inc. v. NLRB*, 336 F.2d 128, 132 (5th Cir.1964); *NLRB v. Rex Disposables*, 494 F.2d 588, 590 (5th Cir.1974).

**5.** The Supreme Court affirmed this test in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), thereby establishing a uniform national standard.

fering a legitimate reason for his discharge—his failure to furnish the Company by a prescribed date and time a valid chauffeurs license which was necessary in the performance of his work duties.

The General Counsel then presented evidence that the Company discharged Lee even though it knew that his driving record had been corrected and that his license would be reinstated upon the completion of certain paperwork; that the Company had insisted that Lee drive when it knew his license was suspended; and that the Company had retained two other drivers whose licenses were under suspension. On the basis of this evidence, the Board determined that the employer's excuse was, in fact, pretextual, and that the Company had violated the terms of section 8(a)(3).

A key element of the evidence presented by the General Counsel at the third stage was in the form of an affidavit prepared by the Board's Field Examiner and signed by Lee in which events relevant to the unfair labor charge were delineated in great detail. Lee died before the hearing on his charge, and his affidavit was admitted into evidence to prove the matters stated in it. The Company objected, arguing that the affidavit constituted hearsay under Fed.R. Evid. 801(c), and was thus inadmissible to prove the matters asserted therein. Fed.R. Evid. 802. The Board, however, found the affidavit admissible under Fed.R.Evid. 804(b)(5), the residual exception to the hearsay rule. The Company here contends that the Board erred in determining that the affidavit met the Fed.R.Evid. 804(b)(5) requirements.

■■■ Rule 804(b)(5) provides that an extra-judicial statement made by an unavailable declarant is not excluded by the hearsay rule if the statement has circumstantial guarantees of trustworthiness equivalent to those listed in Rule 804(b)(1)–(4)—former testimony, belief of impending death, statement against interest, and personal or family history. The Company claims that Lee's affidavit meets none of these criteria and, therefore, that the Board erred in admitting this crucial evidence.

In our view, the admission of the affidavit was error. Although the Board is not held as closely to the rules of evidence as are the courts, *see NLRB v. Capitol Fish Co.*, 294 F.2d 868, 872 (5th Cir.1961), the Act provides that Board proceedings shall, "so far as practicable," be conducted in accordance with the rules. 29 U.S.C. § 160(b). We can discern no reason why the hearsay rules should not govern here. Such an application reveals that the affidavit does not fall within the limited exceptions contained in Rule 804(b)(5).

The affidavits do not constitute "former testimony," nor do they relate to "personal or family history." There is no evidence that Lee had a belief of impending death. Lastly, the affidavits cannot be characterized as "statements against interest." In fact, the opposite is closer to the truth. Lee's statements weighed heavily in direct support of the charge that he had been illegally discharged, a charge that, if successful, potentially would have resulted in reinstatement and an award of back pay.

The Board contends that the circumstances under which Lee gave his affidavit provide ample indicia of the trustworthiness of the statement. We disagree. The Board emphasizes that Lee swore to the truth of the affidavit, thus making himself susceptible to criminal charges if he perjured himself. However, neither in the affidavit nor anywhere in the record is there any indication that Lee knew of his potential liability for perjury. The Board also points to the short time span between the events and the execution of the affidavit. This goes to the accuracy of the recollection, not its truthfulness.

The Board also cites an "abundance of corroboration" which it believes justifies admission of the affidavit. Such evidence includes a copy of a postal money order, a copy of a receipt and a copy of a chauffeur's license, all of which go to the fact that Lee took steps to have his license reinstated. Also relied upon by the Board is a Company position statement which constitutes an admission that a key meeting between Lee and his supervisor actually took place on February 27, 1980.

Although this evidence is consistent with Lee's rendition of the incidents, it does not go to the veracity of several key assertions in the affidavit—particularly to his allegation that he had a second meeting with his supervisor on March 3, 1980, and to his claim that he proffered his supervisor a phone number at the February 27, 1980 meeting.

In his decision, the ALJ cited *Custom Coated Products*, 245 NLRB 33 (1979), as guidance for the admission of the affidavit. That case states the standard followed by the Board:

> [N]umerous Board cases instruct that the affidavit of a deceased party or witness may be admitted into evidence provided, however, that the statements therein are considered only with the utmost care and caution and the closest scrutiny, and that weight may be given to them only when they are wholly corroborated by clear and convincing testimony of other witnesses or documentary evidence.

245 NLRB at 35.

In his findings, the ALJ rhetorically asks, "What is the rationally more probable thing Lee would do in the circumstance?" and "Is it not equally logical to believe that, having accomplished (obtaining record of his license reinstatement), the driver would without delay bring the good news back to the manager and save his job?" It appears that the ALJ believed these speculations constituted corroborative evidence that the March 3, 1980 meeting actually occurred. Such conjecture, however, cannot meet the Board's own requirement of "clear and convincing (corroborative) testimony of other witnesses or documentary evidence."

This court has held that the burden is on the party seeking to invoke the residual exception to clearly demonstrate the existence of the requisite guarantees of trustworthiness. *United States v. Colson*, 662 F.2d 1389, 1392 (11th Cir.1981). The Board does not meet its burden of showing the fact of the March 3, 1980 meeting and of certain activity which transpired at the February 27, 1980 meeting.

In *Central Freight Lines v. NLRB*, 653 F.2d 1023 (5th Cir. Unit A 1981), the court considered the admissibility of a similar affidavit in a Board proceeding, and concluded that the requirements of Rule 804(b)(5) had not been satisfied. In so doing, the court observed "unless application of Rule 804(b)(5) be limited to circumstances evidencing a clear basis of trustworthiness, exceptions to the rule against hearsay could swallow the rule." *Id.* at 1026. We do not find such "a clear basis of trustworthiness" in the record before us. Consequently, we must conclude that Lee's affidavit should not have been admitted into evidence and should not have been considered by the Board in its determination of the reason for Lee's discharge.

Because, as noted by the ALJ, the evidence of the true reason for Lee's dismissal was in sharp conflict, we are unable to assess the impact of Lee's affidavit on the Board's decision. For this reason, we must decline to enforce that portion of the Board's order dealing exclusively with Lee's discharge and remand to the Board for further consideration of relevant evidence apart from Lee's affidavit.

ENFORCED IN PART and REMANDED IN PART.