**In re CORRUGATED CONTAINER ANTITRUST LITIGATION.**

**ANCHOR HOCKING, et al. and Dean Foods Company, et al., Plaintiffs-Appellants Cross Appellees,**

v.

**ALTON BOX BOARD COMPANY, et al., Defendants,**

**Container Corporation of America, et al., Defendants-Appellees Cross Appellants.**

**ANCHOR HOCKING, et al., Plaintiffs-Appellees,**

v.

**CONTAINER CORPORATION OF AMERICA, et al., Defendants-Appellants.**

Nos. 83–2281, 83–2486.

United States Court of Appeals, Fifth Circuit.

April 4, 1985.

Freeman, Rothe, Freeman & Salzman, Raymond J. Mengler, Glynna W. Freeman, Jerrold E. Salzman, Chicago, Ill., for Anchor Hocking in Nos. 83–2281, 83–2486 and Armour & Co., Kraft Inc., & Wilson Foods Corp. in No. 83–2281.

McConnell, Ruberry & Jansen, Francis J. McConnell, Edward F. Ruberry, Chicago, Ill., for Dean Foods Co., Green Giant, Pillsbury, Gypsum Co., et al.

Robert J. Malinak, Richard N. Carrell, Fletcher Etheridge, Stephen D. Susman, William E. Wright, Houston, Tex., for Stone Container.

John D. Roady, Houston, Tex., for Container Corp.

Donovan, Leisure, Newton & Irvine, Eric J. Lobenfeld, Clark E. Walter, Sanford M. Litvack, New York City, for Container Corp. of America.

Richard M. Clinton, Arthur C. Claflin, Seattle, Wash., for Longview Fibre Co.

Thomas P. Hanrahan, Los Angeles, Cal., Norman J. Wiener, Portland, Or., for Williamette Industries, Corco & Western Kraft.

Mary Jo Eyster, H. Richard Wachtel, William G. Primps, New York City, Mayo J. Thompson, Houston, Tex., for St. Regis Paper Co.

Before RUBIN, POLITZ and GARWOOD, Circuit Judges.

**POLITZ, Circuit Judge:**

This appeal is part of the continuing sage of the corrugated container antitrust litigation. In the cases now before us the plaintiffs appeal a jury verdict absolving defendants from liability for damages for antitrust violations. Plaintiffs contend that they were entitled to a judgment *non obstante veredicto* or new trial and that they are entitled to injunctive relief against future violations. The defendants claim that the trial judge erred in denying their motion for costs. In addition, defendants Longview Fibre Company and Williamette Industries contend that the trial judge erred in failing to grant summary judgment or a directed verdict declaring that they were not part of the conspiracy which lay at the heart of the antitrust claims. We affirm.

### Factual Backdrop

The scenario leading to the instant litigation begins in 1975 with a grand jury investigation into potential antitrust violations in the corrugated container industry. During the course of this investigation George L. Connor, a former employee of Hoerner-Waldorf Corporation, an alleged coconspirator of the defendants, was approached by government investigators. Pursuant to a grant of use immunity, Connor agreed to be interviewed by government attorneys on November 14, 1977. Transcripts of the interview, reviewed and corrected by Connor, were presented to the grand jury.

Eventually the investigation spawned a plethora of private lawsuits which were consolidated into a class action. Plaintiffs were purchasers of corrugated containers who elected to opt out of the class action and pursue their own causes of action against the manufacturers. During discovery, the district court ordered that parts of the immunized interviews and grand jury transcripts of certain witnesses, including portions of Connor's interview, be made available to lawyers for the class and the opt-out plaintiffs.[1] Using the portion

1. As in *Pillsbury Co. v. Conboy*, 459 U.S. 248, 250 n. 1, 103 S.Ct. 608, 611 n. 1, 74 L.Ed.2d 430:

of the interview transcript released, plaintiffs deposed Connor on June 26, 1981. Plaintiffs offered testimony from that deposition in their case-in-chief.

Following plaintiffs' offer of Connor's deposition testimony, the trial court released additional grand jury material, including more of Connor's interview. Plaintiffs promptly requested and were granted leave to reopen Connor's deposition. At the reopened deposition Connor invoked the fifth amendment in answer to every question posed. Plaintiffs sought to compel Connor's response but the trial judge declined to so order in light of the Supreme Court's decision in *Pillsbury Co. v. Conboy*, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). When the plaintiffs attempted to introduce the interview, or the reopened deposition quoting from the interview, as substantive evidence, or to use it for impeachment, the trial court excluded the evidence, citing *Pillsbury Co. v. Conboy.*

In response to special interrogatories the jury found in plaintiffs' favor that a conspiracy to fix prices existed. But the jury found that the conduct did not "proximately cause any plaintiff to pay higher prices for corrugated containers and/or sheets than it would have otherwise paid." Plaintiffs unsuccessfully sought judgment n.o.v. or a new trial. On appeal plaintiffs maintain as reversible error justifying a new trial: (1) the exclusion of Connor's interview or the deposition referring to the interview; (2) the admission of defendants' lack of profit testimony; and (3) error in the jury charge relative to liability, impact of the conspiracy, and damages. In addition, plaintiffs contend that the jury verdict finding no impact was against the great weight of the evidence and that they are entitled to injunctive relief.

## Analysis

### 1. *Connor's Interview*

Plaintiffs maintain that the transcript of Connor's interview of November 14, 1977 should have been admitted as substantive

evidence under either Fed.R.Evid. 803(5) or Fed.R.Evid. 804(b)(5). We are not persuaded that on the record before us either evidentiary rule provides the basis for the claimed admission.

Fed.R.Evid. 803(5) provides for the admission into evidence of

[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.

■ The record contains no support for the proposition that Connor was unable to recall the events in question or that the interview correctly reflected that which was fresh in his memory. As we observed in *United States v. Judon*, 567 F.2d 1289, 1294 (5th Cir.1978), the proper predicate for the admission of a written record under Rule 803(5) requires a "showing that the witness had insufficient recollection to enable him to testify fully and accurately at trial" as well as "specific testimony that the recording reflected the witness' knowledge correctly when the matter was fresh in his memory." The transcript of the government's interview of Connor was not admissible under Rule 803(5).

■ Fed.R.Evid. 804(b)(5) allows the admission of a statement made by an unavailable witness as an exception to the hearsay rule under certain circumstances. The rule would admit

[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and

"The propriety of the District Court's release of grand jury materials to the civil parties is not before the Court." We do not address that question.

the interests of justice will best be served by admission of the statement into evidence.

This is the residual or catch-all exception to the hearsay rule. Rule 804(b)(5) tracks exactly the language of Fed.R.Evid. 803(24). We sounded a note of caution in the use of this hearsay exception in *United States v. Thevis*, 665 F.2d 616, 629 (5th Cir.1982), observing that the language of the rule and the legislative history left no doubt of Congress' intent "that the 804(b)(5) residual exception was to be used only rarely, in truly exceptional circumstances." In *Thevis* we concluded that corroborated grand jury testimony which, "for one reason or another is unavailable at trial is neither rare nor exceptional." *Id.* Following the holding and rationale of *Thevis* we now conclude and hold that a government interview under a grant of use immunity which includes testimony the witness is unable or unwilling to repeat at trial is neither rare nor exceptional. Nor, as in the *Thevis* testimony, is it inherently trustworthy. Even though given under oath, or subject to the coercive strictures of 18 U.S.C. § 1001, such interviews lack the expurgation of confrontation and cross-examination. Further, the grant of use immunity might occasion or encourage the conscious or unconscious embellishment of the recollection of the witness. The transcript of Connor's interview does not qualify for admission under the residual exception to the hearsay rule.[2]

■ Plaintiffs' final argument on this point is that the transcript of Connor's interview should have been admitted for impeachment purposes. The trial court excluded the interview based on its conclusion that *Pillsbury Co. v. Conboy* prohibited all use of the immunized interview. Whether or not that decision prohibited the use of the immunized testimony, it certainly would have prevented the defendants from interrogating Connor on the content of the interview and prevented the defendants from attempting to establish that the true version of events was that given by Connor at the deposition, not the scenario he painted in the government interview when he was presumably serving his own ends in gaining immunity. Federal Rule of Evidence 613 prohibits the use of extrinsic evidence of a prior inconsistent statement unless two conditions are satisfied: the witness must be afforded an opportunity to explain or deny it, and the opposite party must be afforded an opportunity to interrogate him thereon. We need not consider whether Connor had an opportunity to explain or deny his prior statements but gave that up by invoking his fifth amendment right to refuse to testify for the second condition is not met. The issue of Connor's credibility concerned not only Connor and the plaintiffs but the plaintiffs and the defendants. *Pillsbury Co. v. Conboy* would not allow the defendants' interrogation of Connor and thus the interview would have been inadmissible even for impeachment.

Rule 613 permits the impeachment evidence to be admitted even without satisfy-

2. The court declined to permit introduction of evidence under the residual exception in *N.L.R.B. v. United Sanitation Service*, 737 F.2d 936 (11th Cir.1984); *Lloyd v. Professional Realty Services, Inc.*, 734 F.2d 1428 (11th Cir.1984); *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963 (7th Cir.1983); *United States v. Colson*, 662 F.2d 1389 (11th Cir.1981); *Central Freight Lines, Inc. v. N.L.R.B.*, 653 F.2d 1023 (5th Cir.1981); *United States v. Atkins*, 618 F.2d 366 (5th Cir.1980); *United States v. Fredericks*, 599 F.2d 262 (8th Cir.1979); *United States v. Kim*, 595 F.2d 755 (D.C.Cir.1979); *United States v. Love*, 592 F.2d 1022 (8th Cir.1979); *United States v. Bailey*, 581 F.2d 341 (3d Cir.1978); *United States v. Gonzalez*, 559 F.2d 1271 (5th Cir.1977); and *United States v. Yates*, 524 F.2d 1282 (D.C.Cir.1975).

The court admitted such statements in *United States v. Murphy*, 696 F.2d 282 (4th Cir.1982); *United States v. Walker*, 696 F.2d 277 (4th Cir. 1982); *Wright v. Farmers Co-op of Ark. and Okla.*, 681 F.2d 549 (8th Cir.1982); *United States v. Boulahanis*, 677 F.2d 586 (7th Cir.1982); *United States v. Van Lufkins*, 676 F.2d 1189 (8th Cir.1982); *United States v. West*, 574 F.2d 1131 (4th Cir.1978); *Justak Bros. & Co., Inc. v. N.L.R.B.*, 664 F.2d 1074 (7th Cir.1981); *Robinson v. Shapiro*, 646 F.2d 734 (2d Cir.1981); *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir.1979); *Furtado v. Bishop*, 604 F.2d 80 (1st Cir.1979); *United States v. Garner*, 574 F.2d 1141 (4th Cir. 1978); *United States v. Medico*, 557 F.2d 309 (2d Cir.1977); and *United States v. Carlson*, 547 F.2d 1346 (8th Cir.1976).

ing these two conditions if "the interests of justice otherwise require." We need not here define the exact limits of this exception for the impeachment value of Connor's interview would have been so minimal on the crucial injury issue that, regardless of other considerations, the interests of justice did not require its admission.

### 2. *"Lack of Profit" Evidence*

▪ Plaintiffs offered expert testimony built around an economic model which resulted in an estimate of the amount by which the plaintiffs had been overcharged for corrugated boxes during the conspiracy. Defendants rebutted with expert testimony to the effect that if defendants had charged prices which qualified as fair under plaintiffs' economic model they would have operated in the red. Plaintiffs argue that defendants' expert testimony should have been excluded because a conspiracy tends to inflate costs as well as prices charged and that in an untainted competitive market reduced prices would not have resulted in a loss posture. Plaintiffs' challenge to this testimony goes to its weight, exclusively a jury function, and not to its admissibility. The evidence was relevant and admissible on the issue of the credibility and accuracy of plaintiffs' expert testimony and the question presented was for the jury. This claim of error lacks merit.

### 3. *The Jury Instructions*

Plaintiffs maintain that the court erred in three particulars in its charge to the jury: (1) by failing to instruct the jury that the impact of the conspiracy could be inferred from the fact that plaintiffs purchased products during the period of the price-fixing conspiracy; (2) by giving instructions which confused the fact of injury and the amount of damage; and (3) by imposing on plaintiffs a burden of proof of damages beyond that properly required. We are not persuaded.

▪ Plaintiffs requested a jury charge which read in pertinent part:

In order to establish their claim, the plaintiffs must prove by a preponderance of the evidence two elements:

1. That at least one defendant and one or more other defendants and co-conspirators engaged in a conspiracy, combination or course of conduct that had the purpose or effect of fixing, maintaining or stabilizing corrugated container and sheet prices at higher than competitive levels; and

2. That plaintiffs purchased corrugated containers and sheets from defendants during the time the conspiracy or combination was in existence.

If you find that the plaintiffs have established these two elements by a preponderance of the evidence, then your verdict must be for the plaintiffs. If the plaintiffs have not established both elements, then your verdict must be for the defendants.

This proposed charge does not correctly state the prevailing law. To recover in a private antitrust action the plaintiff must prove a violation of the antitrust laws and must further prove that the violation caused damage. In *Nichols v. Mobile Bd. of Realtors*, 675 F.2d 671, 675–76 (5th Cir. 1982), we stated "Private antitrust liability . . . requires the showing of (1) a violation of the antitrust laws, (2) the fact of damage, and (3) some indication of the amount of damage (citations omitted). The requirement of the 'fact of damage,' also called 'impact,' means that the antitrust violation must cause injury to the antitrust plaintiff." In a case involving a conspiracy to fix prices, the plaintiff must prove that the conspiracy in fact affected the prices paid. The charge proposed by plaintiffs would allow recovery without proof of impact. That is not the law.

The court charged the jury as follows:

The first question you are called upon to decide is whether there was a single continuing conspiracy among two or more corrugated producers to fix, raise, maintain, or stabilize or to otherwise affect the prices of containers and sheets sold throughout the United States. . . .

A conspiracy is an agreement or understanding between two or more persons.... In order to establish that a conspiracy existed, the evidence in the case must show that the members of the conspiracy in some way or manner came to a mutual understanding to try to accomplish a common plan; that the alleged conspiracy existed and that one or more of the means or methods alleged by the plaintiffs were agreed upon to be used, in an effort to accomplish some object or purpose of the alleged conspiracy; and that two or more corrugated manufacturers were knowingly members of the alleged conspiracy.... The success or failure of the conspiracy to accomplish the common object or purpose is immaterial to the question of whether there was a conspiracy as alleged here. It is material to whether plaintiffs were injured, an issue which will be addressed under Question No. 2.... If your answer to Question No. 1 was "yes," then you must consider Question No. 2 relating to whether each plaintiff was injured. Each plaintiff must prove that the alleged conspiracy was the proximate cause of injury to it. This injury would be higher prices than it would have paid had there been no conspiracy.... An effect on prices would not only include raising prices to a level higher than prices would have been absent the conspiracy, but would also include preventing prices from dropping as much as they would have otherwise dropped absent the alleged conspiracy.

This charge is a correct statement of the law; it requires the plaintiffs to prove both elements of their cause of action in order to recover.

■ Plaintiffs next contend that the jury charge confuses the fact of damage and the amount of damage, leading the jury to believe that unless the plaintiffs proved the amount of damages with certainty, no recovery could be allowed. Reading the charge as a whole, and considering all statements in context, particularly in light of the questions posed on the verdict form, we find no reversible error in the charge. As we held in *Scheib v. Williams-McWilliams Co., Inc.,* 628 F.2d 509, 511 (5th Cir.1980):

> In the review of jury instructions, a challenged instruction should not be considered in isolation but rather as part of an integrated whole. If, viewed in that light, the jury instructions are comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate. (Citation omitted.)

In instructing the jury on the fact of injury, the trial judge neither referred to the amount of damage nor the degree of certainty with which the amount of damage must be proven. No reference was made to the amount of damages until the court reached the jury questions specifically relating to the amount of damage. The jury instructions were carefully tailored to match the questions sequentially posed on the special verdict form. Both the instructions and the verdict form separate the fact of damage from the amount of damage. "A trial judge is afforded broad discretion in tailoring jury instructions...." *United States v. Harrelson,* 705 F.2d 733, 736 (5th Cir.1983). The claim of confusion lacks merit.

■ In their final challenge to the instructions, plaintiffs contend that the court imposed an overly onerous burden of proof as to damages. The court charged:

> The measure of damages which you shall apply in the event you find that any plaintiff is entitled to recover is the amount the prices paid by such plaintiff exceeded the prices which it would have paid in the absence of the conspiracy. This difference is the alleged overcharge. You are asked to find the amount of overcharge in terms of a percentage of the price or prices actually paid. However, you may not indulge in guess, conjecture or speculation as to a figure.
>
> In an antitrust case, once a plaintiff proves that it has been injured, it is entitled to utilize any just and reasonable method short of speculation to calculate

the amount of its damages based on relevant data.

A plaintiff must prove the amount of overcharge by the evidence and with reasonable certainty, but such damages need not be proved with exact mechanical accuracy. Damages must be proved by facts from which their existence is justly and reasonably inferable.

Although this charge suffers a bit from lack of precision, taken as part of the totality of the instructions it passes muster. *Scheib v. Williams-McWilliams.*

### 4. *Weight of the Evidence*

■ Plaintiffs argue that the jury verdict was against the great weight of the evidence. We do not agree. The record contains ample evidence to support the jury's verdict. Synopsizing, plaintiffs offered evidence which attributed price increases to price fixing. Defendants countered with evidence that the price increases were caused by increases in the cost of linerboard, fuel, and labor. The jury could reasonably have believed either explanation. The jury's resolution is entitled to deference. *Boeing v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc).

### 5. *Injunctive Relief*

■ In responding to question number 1 of the special verdict, the jury found that a conspiracy to fix prices had existed in the corrugated container industry. Based on this finding, plaintiffs request an injunction barring defendants from exchanging price information in the future. The trial judge denied injunctive relief. In this setting, a plaintiff must demonstrate "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur" in order to be entitled to an injunction. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969). Considering the intense attention and focus brought to bear on this entire industry as a result of the myriad civil and criminal proceedings, it seems highly unlikely that there is a "significant threat of injury from an impending

violation of the antitrust laws." There is no error in the trial court's refusal to grant equitable relief.

### 6. *Costs*

■ The judgment directs each party to bear its own costs. The defendants claim that this order is contrary to Fed.R.Civ.P. 54(d) which states in part:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

The defendants argue that the court's failure to award them costs was an abuse of discretion. We do not agree. The jury found for the plaintiffs in part and for the defendants in part. The trial court acted within its discretion in its assessment of costs. *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946); *In re Nissan Antitrust Litigation,* 577 F.2d 910 (5th Cir. 1978); *Missouri Pacific Railroad Co. v. Star City Gravel Co., Inc.,* 592 F.2d 455 (8th Cir.1979).

### 7. *Longview Fibre Co. and Williamette Industries*

Longview Fibre and Williamette Industries are defendants in some but not all of the cases now before us. They were also defendants in the class action litigation. In that trial, the jury specifically found that Longview and Williamette were not members of the conspiracy. In the case before us, Longview and Williamette moved for summary judgment based on the doctrine of collateral estoppel. Summary judgment was denied. At the close of the plaintiffs' case, Longview and Williamette moved for a directed verdict on the grounds that they were not members of the conspiracy. That motion was also denied.

■ A class action judgment cannot be used to collaterally estop an opt-out plaintiffs' action against a defendant in a separate action. An opt-out plaintiff is not

a party to the class action and is not bound by the class action judgment. The doctrine of collateral estoppel cannot bind a person who was neither a party nor privy to a prior suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The summary judgment was properly denied.

 While the amount of evidence concerning Longview and Williamette was small compared to that concerning other defendants, there was evidence of conversations by representatives of Longview and Williamette concerning prices charged to the plaintiffs. The trial judge did not err in denying the directed verdict.

Finding no merit in any assignment of error we AFFIRM the district court in all respects.

Alvin B. Rubin, Circuit Judge, filed concurring statement.