[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13736
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2011
JOHN LEY
CLERK

Agency No. 10-CA-37628


NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

CSS HEALTHCARE SERVICES, INC.,

Respondent.


_____

Applications for Enforcement of a Decision of the
National Labor Relations Board

_____

(March 30, 2011)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

In this case, the National Labor Relations Board (NLRB) seeks enforcement

of an administrative law judge's (ALJ) order instructing CSS Healthcare Services (CSS) to reinstate former employee Victoria Torley. CSS also seeks review of the ALJ and NLRB order. After a review of the record, we conclude that substantial evidence supports the NLRB's decision and, accordingly, we enforce the order.

I. Background[1]

CSS provides in-home health-care services in Jonesboro, Georgia. In 2007, John Agulue, the CEO of CSS and Georgia Community Care Solutions (GCCS), hired Torley to work for GCCS to coordinate GCCS's startup as part of an Intensive Family Intervention program funded by Medicaid. Torley and Dollmeishia Adams were the only employees of GCCS. They were responsible for seeking accreditation and grants for the new program and reported to Agulue. Torley was an hourly employee who received no benefits, but she was paid for the work she performed regardless of her success. Agulue set her schedule each week based on deadlines for projects under review. She was initially paid with checks from CSS and would occasionally use CSS administrative staff. Torley had access to a GCCS computer, company car, and various office supplies through GCCS.

---

[1] The ALJ credited Torley's testimony. We give special deference to the ALJ's credibility determinations, which will not be disturbed unless they are inherently unreasonable or self-contradictory. *NLRB v. United Sanitation Serv.,* 737 F.2d 936, 938 (11th Cir. 1984). Having reviewed the testimony from the administrative hearing, we see nothing inherently unreasonable in his credibility findings. Thus, we recite the facts as found by the ALJ.

Torley submitted weekly "activity reports" to Agulue and would consult with Agulue about other possible grant sources before applying for such grants. Agulue would review grant applications before they were submitted to the appropriate agency.

In April 2008, while various applications were pending and there was no additional work for Torley to do, Agulue told Torley to take a hiatus and he would call if there was work for her. Two weeks later, Agulue asked Torley to work at CSS as a behavior specialist. Although she initially worked part-time in this capacity, she later began to work full-time when she took on additional projects that needed accreditation. She also sat on various CSS employee committees as assigned by Agulue. Torley continued to work on an hourly basis and was required to sign in and out for time-keeping purposes. Torley attended weekly staff meetings and was present when other employees expressed concerns about working conditions. Nikita Davis, the program manager for CSS's Mentally Retarded Waiver Program, brought these concerns to Agulue's attention and reported at a subsequent staff meeting that Agulue was supportive of the staff's concerns. Although Davis told the staff that Agulue would implement policy changes, no changes ever occurred.

In July 2008, as a result of a routine state audit, CSS's programs were cited

for a number of deficiencies. Among the deficiencies cited was the auditor's concern over Torley's qualifications as a behavior specialist. Torley compiled the documents the auditor needed and ultimately cleared the deficiency. During this same time period, Torley researched the staff members' complaints and learned that the staff would have more leverage if they formed a collective bargaining unit. After advising her co-workers of this, about ten employees met with Agulue and his wife to present employee policy suggestions. Agulue advised them that they were independent contractors and would not be considered employees until they had worked for the company for more than 90 days. When Torley asked what her status was, Agulue was evasive until his wife stated that Torley was an employee. Following this meeting, Torley researched Agulue's claim and determined that her co-workers were not independent contractors. She told her co-workers at the next staff meeting.

On September 3, Torley met with Agulue and "invoked whistleblower status." She informed Agulue that the employees had formed a collective bargaining unit. Agulue told Torley that CSS did not need a full-time behavior specialist, but Torley reminded him that she worked on other projects for CSS. She later sent Agulue an e-mail on this topic. Agulue alleged that he responded by memo, advising Torley that there was no opening for a behavior specialist and

4

questioning the status of the GCCS grant applications. That same day, Agulue's wife met with Torley and asked Torley why she was trying to create trouble for CSS.

On September 8, 2008, Torley attended a staff meeting in which employees raised new concerns about working conditions. Agulue proposed a policy change to address these concerns. When none of the employees commented about the new policy, Torley spoke up. Agulue asked if Torley was speaking for herself, and when Torley said "no," Agulue told her she should be quiet. That afternoon, Agulue came to Torley's office to discuss that he had learned that GCCS's state accreditation application had been denied. After the two again discussed Torley's role at CSS, Torley was terminated. Agulue told Torley she was being fired because she failed to produce results.

In 2009, Torley filed an unfair labor practice charge with the NLRB against CSS, alleging that she was terminated due to her involvement with protected concerted activities. CSS responded that Torley was not an employee under the National Labor Relations Act (the Act), but was an independent contractor hired by another company, GCCS, Inc. CSS also denied engaging in any unfair labor practices.

At the administrative hearing, both Torley and Agulue testified. Agulue

stated that he had terminated Torley because she began "causing a commotion" and became "hysterical" when he questioned her about GCCS's accreditation status. He also testified that he fired Torley because she had not produced results and because the state audit had found her work unsatisfactory.[2] The ALJ concluded that Torley was an employee under the Act and that CSS had terminated Torley's employment due to her involvement with protected concerted activities. Specifically, the ALJ applied the common-law agency test to determine if Torley was an employee. Pointing to the Restatement (Second) of Agency, § 220, the ALJ considered the following factors:

> (a) the extent of control which . . . the [employer] may exercise over the details of the work; (b) whether or not the [individual] is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the [individual] supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of [employer and employee]; and (j) whether the principal is or is not in the business.

---

[2] The state auditor testified at the administrative hearing, contradicting Agulue's testimony and corroborating Torley's. The auditor confirmed that the state had been satisfied with Torley's credentials and that CSS had been prohibited from admitting any new patients to its programs until it cleared the audit deficiencies. The director for the state provider enrollment also testified, explaining that the state had rejected CSS's and GCCS's applications based on the deficiencies.

RESTATEMENT (SECOND) OF AGENCY § 220 (1958).

The ALJ then found that Torley was engaged in protected concerted activities and that Agulue fired her for this reason. The ALJ credited Torley's testimony about her involvement in staff meetings and bringing staff concerns to Agulue's attention. The ALJ further noted Mrs. Agulue's statement to Torley that she was trying to create trouble for the agency. The ALJ then considered whether Torley would have been terminated regardless of her activities and found that Agulue had not proven this to be the case. The ALJ found that Agulue's stated reason for Torley's termination – that Torley had not delivered on her promise to obtain funding for GCCS – was pretextual because there was evidence that the delay in funding was due to deficiencies in CSS's programs as determined by the state audit and not due to any fault by Torley. Accordingly, the ALJ ordered CSS to reinstate Torley's employment and to make her whole for any lost earnings and benefits.

The NLRB adopted the ALJ's decision. On appeal to this court, we vacated and remanded for reconsideration in light of the Supreme Court's decision in *New Process Steel, L.P. v. NLRB*, 130 S.Ct. 2635 (2010) (requiring a quorum of three members for NLRB panel). *See CSS Healthcare Servs., Inc. v. NLRB*, 2010 WL 4069524 (11th Cir. 2010) (unpublished). On remand, the NLRB again adopted the

7

ALJ's decision and ordered that Torley be reinstated with reimbursement for lost earnings and benefits. The NLRB now seeks enforcement of this order.

## II. Standard of Review

We review the NLRB's decision to ensure that it is supported by substantial evidence on the record as a whole. *NLRB v. U.S. Postal Serv.*, 526 F.3d 729, 732 (11th Cir. 2008); *see also* 29 U.S.C. § 160(e). This standard does not permit us to overturn a NLRB decision supported by substantial evidence even if we would reach a different conclusion were we to decide the case *de novo*. *Purolator Armored, Inc. v. NLRB*, 764 F.2d 1423, 1428 (11th Cir. 1985). We must also give special deference to the ALJ's credibility determinations, which will not be disturbed unless they are inherently unreasonable or self-contradictory. *NLRB v. United Sanitation Serv.,* 737 F.2d 936, 938 (11th Cir. 1984).

## III. Discussion

The NLRB argues that substantial evidence supports the ALJ's conclusion that Torley was an employee under the Act based on the factors set out in Restatement (Second) of Agency, § 220. It further argues that substantial evidence supports the conclusion that Agulue fired Torley because of her participation in protected concerted activities. Finally, the Board argues that Agulue's stated reasons for terminating Torley were pretextual.

CSS disputes that Torley was an employee because her job was temporary and CSS did not regulate her activities. CSS also disputes that Torley engaged in any protected concerted activity, and it notes that it was unaware of any such conduct. According to CSS, the ALJ relied solely on credibility determinations to find that Torley engaged in concerted activities. CSS contends that it can discharge an employee for any reason, regardless of motive, because employment in Georgia is at-will.[3] CSS then argues that the ALJ's conclusions that Torley engaged in concerted activities and that Agulue fired her because of this conduct were not supported by substantial evidence.

Section 8(a)(1) of the Act makes it an "unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]." Section 7 guarantees employees "the right to self-organization, to form, join, or assist labor organizations," and "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Thus, the Act protects activities that are reasonably expected to affect conditions of employment. *Brown & Root, Inc. v.*

---

[3] We reject this argument without further discussion because Georgia's status as an at-will employment state is not relevant to whether an employer violated the Act.

9

*NLRB*, 634 F.2d 816, 818 (5th Cir. 1981).[4]  To fall within § 7's "concerted

activity," the employee must act "with or on the authority of other employees, and

not solely by and on behalf of the employee himself."  *Rockwell Intern'l Corp. v.*

*NLRB*, 814 F.2d 1530, 1534 (11th Cir. 1987).  Acts of a single employee could

constitute concerted activity.  *Id.* at 1535.

The Act applies to any employee under 29 U.S.C. § 152(3), but not to an

independent contractor.  To determine whether the charging party was an

employee or an independent contractor, the NLRB applies common law agency

principles.  *See NLRB v. Deaton, Inc.*, 502 F.2d 1221, 1223 (5th Cir. 1974).  We

will affirm the NLRB's determination if supported by substantial evidence and we

will not substitute our judgment for that of the Board.  *Id.*

After a thorough review of the record and the parties' briefs, we agree with

the ALJ's well-reasoned analysis as set forth in its order and conclude that Torley

was an employee under the Act, that she engaged in protected concerted activities

of which Agulue was aware, and that Agulue fired her due to her involvement in

these activities.  Accordingly, we adopt the ALJ's report and issue an enforcement

order against CSS.

---

[4]    Decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

For the foregoing reasons, the enforcement order of the NLRB is GRANTED.