BROWN & ROOT, INC., Petitioner, Cross–Respondent,

v.

The NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner.

No. 79–3491.

United States Court of Appeals, Fifth Circuit. Unit A

Jan. 19, 1981.

Powell, Brown & Maverick, William L. Bedman, William A. Brown, Harry M. Thomson, Jr., Houston, Tex., for petitioner, cross–respondent.

Elliott Moore, Deputy Associate Gen. Counsel, Diana Orantes Ceresi, Washington, D. C., for respondent, cross–petitioner.

Before WISDOM, RUBIN and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

■ The National Labor Relations Board found that two Brown & Root employees were unlawfully discharged for engaging in concerted activity and ordered the employer to offer them immediate reinstatement and to compensate them for any lost earnings. We conclude that the NLRB's findings were supported by substantial evidence in the record considered as a whole and its legal conclusions were correct. Therefore, we enforce the Board's order.

Wayne Landry and Karl Ockmond worked for Brown & Root as journeymen pipefitters. On the morning of January 23, 1979, a crew of approximately twenty pipefitters, including Landry and Ockmond, were working on a dock that extended into the Mississippi River. Although some of the testimony was contradictory in other regards, all agreed that the wind was blowing a fine mist of rain from the direction of the river. Ockmond, who was operating an electric drill, and several other employees complained to a foreman about the hazards of working with electrical equipment in wet weather. Responding to the workers' complaint, the foreman requested that a safety supervisor inspect the dock area and evaluate the workers' safety. The supervisor inspected the equipment and concluded that it was safe to continue working.

Later that morning, the mist became a heavier rain shower. Ockmond, Landry and most, if not all, of the crew ceased work and sought shelter. Subsequently, the foreman came into the shelter to which the employees had retreated and ordered them to resume working. Amid some grumbling, most of the workers obeyed the instruction. Landry and Ockmond, however, refused to return to work. The foreman promptly fired both of them. The Board affirmed the finding of the Administrative Law Judge that Landry and Ockmond would have returned to work had the rain abated to the light drizzle or mist in which they had worked earlier that morning.

Brown & Root does not dispute any of the findings of fact made by the Administrative Law Judge and adopted by the Board. It contends, however, that the Board was incorrect, as a matter of law, in concluding that the actions of Landry and Ockmond were concerted activities protect-

ed by Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, and that their discharges violated Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1).

Employees' activities are protected by Section 7 if they might reasonably be expected to affect terms or conditions of employment. The Supreme Court long ago established that employees' activities are protected when, as a concerted protest, they refuse to work in what they perceive to be unsafe or uncomfortable conditions. *N. L. R. B. v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). The twenty members of the crew, by seeking shelter from what they thought were unsafe working conditions, were engaged in protected Section 7 concerted activity. The quality of the work stoppage as concerted activity was not altered when, in the face of their foreman's demand, all the employees except Ockmond and Landry returned to work in the rain.

It is, of course, possible to construe the evidence in a different light. The employer contends that Ockmond alone refused to work, that this was an individual refusal to obey orders and that Landry joined only because he feared that he would become ill. There was, however, substantial evidence to support the view that the two were acting in concert. For concerted action to exist, Section 7 does not require a minimum sized congregation. Two individuals acting together to improve working conditions are acting in concert and are protected by Section 7. Because Ockmond and Landry were engaged in concerted activity, their discharges violated Section 8(a)(1) which makes it unlawful to interfere with, restrain or coerce employees engaged in protected activities.

In addition to the usual cease and desist order, the Board ordered Brown & Root to offer Ockmond and Landry immediate reinstatement and to make each of them whole for any earnings lost from their date of discharge. Brown & Root contends that the back–pay award was inappropriate because the employees had not sought reinstatement.

It is not our function to fashion remedial measures. That duty rests upon the Board, and we defer to its determination of the proper remedy for unfair labor practices. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271, 1283 (1941). The Board found that the work stoppage engaged in by Ockmond and Landry did not amount to a strike but a protected concerted activity that did not amount to a general work refusal. It found that they stood ready to return to work after the adverse weather conditions abated. It concluded that, in the face of the unlawful discharges, requests for reinstatement would have been wholly ritualistic and that Brown & Root was obligated to offer reinstatement to the employees without awaiting a demand for reinstatement by Ockmond and Landry. *See Evergreen Helicopters, Inc.*, 223 N.L.R.B. 317, 319–20 (1976), *enf'd*, 564 F.2d 1293 (9th Cir. 1977); *N. L. R. B. v. Southern Greyhound*, 426 F.2d 1299, 1303–4 (5th Cir. 1970). This appears to be a rational determination, well within the remedial latitude afforded the Board.[1]

Accordingly, the Board's order is ENFORCED in all respects.

---

1. Because these employees were not strikers, we do not consider the propriety of the new remedial principle announced by the Board in *Abilities & Goodwill, Inc.*, 241 N.L.R.B. No. 5, 100 L.R.R.M. 1470 (1979), *enforcement denied on other grounds*, 612 F.2d 6 (1st Cir. 1979). *See also N. L. R. B. v. May Sales & Equipment Co.*, 626 F.2d 567, 573–75 (7th Cir. 1980). In those cases, the Board ordered employers to pay lost wages to unlawfully discharged striking employees from their date of discharge despite the absence of a request for reinstatement.