**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SERVICE MACHINE & SHIPBUILDING CORP., Respondent.**

No. 81–4115
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1981.

Elliott Moore, Assoc. Deputy Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Norman A. Mott, III, Jerrald L. Shivers, New Orleans, La., for respondent.

Before CLARK, Chief Judge, RUBIN and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

The National Labor Relations Board (NLRB) has applied for enforcement of its order directing Service Machine & Shipbuilding Corp. (Service Machine) to reinstate and pay lost wages to four of its former employees whom the Company had discharged for refusing to operate electrical equipment in the rain. The NLRB's findings are supported by substantial evidence in the record considered as a whole, and its legal conclusions are correct. The Board's order is, therefore, enforced.

Service Machine is in the business of marine construction and ship repair. Nathaniel Buggage, Frank Dorsey, McCullem Williams, and Thomas Coleman were employed by the Company as welders. On September 19, 1979, Service Machine shut down the majority of its yard and boat landing operations because a light drizzle of rain was falling. Shortly before it shut down operations, however, it had loaded an eighty-six foot tall platform[1] onto a barge tied up to one of its boat landings in the bayou. The rains came before Service Machine could secure the platform to the barge. Fearing that the worsening weather conditions would rock the barge and cause the platform to slip off, Service Machine sought volunteers to work overtime to weld the platform into place. Eight welders, including the four complainants, and several fitters agreed to stay.

While the fitters performed some preliminary work on the cross braces which were

---

1. The platform is actually a tower built of four large pipe pillars, braced by crossbeams, which support a lower deck about 56 feet above the floor of the barge and an upper deck yet another 30 feet above that. Equipment and smaller structures sit on the platform's decks.

used to fasten the platform to the barge, Buggage, Dorsey, Williams, and Coleman sought shelter from the rain in a shack near the boat landing. Before the fitters finished, welding foreman Milton Duval ordered these men out to the barge. Carrying their equipment and unprotected by rain gear, the men ran out to the barge and sought shelter under the platform's lower deck. This deck, however, stood fifty-six feet above the floor of the barge and provided little protection from the elements.

After the fitters finished, Dorsey and Williams used their welding equipment to tack one of the braces into place. The welding equipment was powered by 440 volts of electricity and both Dorsey and Williams testified that they received small shocks while tacking the brace. As they finished tacking, the rains became heavier. Dorsey, Williams, Buggage, and Coleman then told Duval that they would not weld in the rain. When Duval ordered them to continue, they protested, saying that they had their families to consider and would not be paid if they became ill.[2] Duval told them to go home if they were not going to work.

It was raining harder still when the men were confronted by Supervisor Rudy Thibodeaux, who told them that they were fired if they did not return to work. Following this conversation, the men left the yard.[3] They returned to the yard the next day and spoke with Thibodeaux, who told them that they had been discharged when they left work the night before and directed them to collect their equipment and check out.

The ALJ found that these employees were discharged when they collectively exercised their right to refuse to expose themselves to the danger, of which all persons involved were aware, of a major electrical shock, and concluded that their discharge under these conditions violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). A three-member panel of the Board unanimously affirmed the ALJ's findings and conclusions on this point,[4] and adopted his order of reinstatement and back pay.

The facts in this case are in all significant respects identical to those of Brown & Root v. NLRB, 634 F.2d 816 (5th Cir. 1981), in which this Court held the employees' refusal to operate electrical equipment in the rain to be a concerted activity protected by section 7 of the National Labor Relations Act, 29 U.S.C. § 157, and a discharge precipitated by this refusal to be a violation of section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1). The distinctions offered by Service Machine, that its employees, unlike those of Brown & Root, volunteered to work in emergency conditions, and that its employees failed to articulate expressly their fear of electrical shock prior to their walkout, are distinctions without a difference.

2. Our review of the record reveals that Dorsey, Coleman, and Williams all testified that they, at this time, expressed a fear of electrocution to Foreman Duval. The Administrative Law Judge (the ALJ), however, apparently overlooked Coleman's and Williams' corroboration of Dorsey's testimony to this effect, and chose not to credit Dorsey's testimony on this point "in view of neither Coleman nor Williams recalling such comments." The Board adopted this section of the ALJ's opinion without modification or dissent. This apparent error is, however, irrelevant in light of our agreement with the Board's conclusion that the danger of electrical shock was known to Duval.

3. The record indicates that the remaining welders completed the job after Duval and Thibodeaux shielded the work area with plastic sheeting and gave the other welders dry gloves. The ALJ found that neither Duval nor Thibodeaux offered, in their exchanges with the complainants, to put up the plastic sheeting.

4. The ALJ found as well an alternative ground for his order of reinstatement and back pay in his conclusion that, whether or not the welders were concerned for their safety, their simultaneous refusal to work in the rain constituted concerted activity and was therefore protected under the Act. On review of his order, one member of the Board dissented from this construction of "protected concerted activity." On appeal, Service Machine urges us to refute this conclusion, characterizing it as a per se rule protecting all refusals to work regardless of the conditions under which the refusal occurs. Because we find that the Board's order is amply supported by the ALJ's conclusion that the employees acted out of their fear of a hazard which was apparent to all persons involved, we express no opinion on this issue.

The Company's argument that its employees lost their right to protest the dangers and discomforts inherent in emergency conditions by volunteering to work under such conditions is premised on a version of the facts at odds with that found by the Board. These employees did not, as the Company would have it, volunteer to weld in wet weather. At the time when they agreed to stay, the rain was only a drizzle, and their clothes were dry. *N.L.R.B. v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962) firmly established that an employee's waiver of his section 7 rights is not lightly to be implied from an earlier accession to less-than-optimal conditions. The employees of Washington Aluminum Company regularly worked in a Baltimore, Maryland machine shop which was not insulated, which frequently had to be opened to the weather, and which was heated primarily by an oil furnace located in an adjacent building. Even though the conditions which normally obtained in the shop during the winter were quite cold, the Supreme Court found a protected exercise of section 7 rights in the employees' walkout when the furnace broke down. The situation which confronted Buggage, Williams, Dorsey, and Coleman in its significant respects is strikingly similar to that which precipitated the employee walkout in *Washington Aluminum.* Their agreement to work in conditions which, while perhaps unpleasant, were not hazardous, did not preclude their refusal to continue to work when conditions worsened to present a danger of major electrical shock.

Nor is it relevant that the Board found that these men failed to state explicitly their fear of electrical shock before walking off the job. As stated by the Supreme Court in *Washington Aluminum,*

> We cannot agree that employees necessarily lose their right to engage in concerted activities under § 7 merely because they do not present a specific demand upon their employer to remedy a condition they find objectionable. The language of § 7 is broad enough to protect concerted activities whether they take place before, after, or at the same time such a demand is made.

*Id.,* 82 S.Ct. at 1102.

The objections offered by Service Machine are found to be without merit. The order of the Board is enforced.

ENFORCED.