**ROCKWELL INTERNATIONAL CORPORATION, Petitioner-Appellant, Cross-Appellee,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Appellee, Cross-Appellant,**

and

**Communications Workers of America, Local 3263, Intervenor.**

No. 86–8152.

United States Court of Appeals, Eleventh Circuit.

April 20, 1987.

R. Lawrence Ashe, Jr., Gavin S. Appleby, John F. Wymer, III, Atlanta, Ga., for petitioner-appellant, cross-appellee.

Kevin Fitzpatrick, Decatur, Ga., for Local 3263.

Elliott Moore, N.L.R.B., Kenneth B. Hipp, Beverly A. Oyama, Christopher Young, Washington, D.C., for respondent-appellee, cross-appellant.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

SWYGERT, Senior Circuit Judge:

This case is before the court upon a petition for review and cross-application for enforcement of an order of the National Labor Relations Board (the Board or NLRB). Substantial evidence supports the Board's findings that Rockwell International Corporation (Rockwell or the Company) violated section 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1). The Board found that Rockwell had violated the Act by threatening and discharging an employee, Kathy Denaple, because of her union involvement and her protected, concerted activities. We enforce the order.

I

*Facts* [1]

Rockwell manufactures missile components at its Norcross, Georgia plant. Denaple had worked at that plant since November 1979, first as an Assembler in the Wire Harness Department, then since 1982 as a Generalist, a nonsupervisory leadperson.

In July 1984, Communications Workers of America, Local 3263 (CWA or the Union), the intervenor in the present case, began an organizing campaign among

---

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The statement of facts is drawn from the Administrative Law Judge's findings of fact. 278 N.L.R.B. No. 13 at 2–20.

Rockwell's employees. Denaple supported the campaign, attending meetings and distributing union authorization cards.

■■■ On September 25, 1984,[2] Denaple's supervisor, Brennice Cash, asked Denaple if she was involved with a union. When Denaple replied that it was none of Cash's business, Cash said that union involvement would hurt her work record. Cash further stated that a union was not necessary because Rockwell could work out any problems that existed.

On the morning of January 25, 1985, supervisors Cash and Barry Cheek held a meeting with the employees of Denaple's department. Cheek told the group that they spent too much time in the washrooms and that their radios were too loud.[3] Denaple contradicted Cheek during the meeting, asserting that the music from the headphones was not loud enough for others to hear. She claimed that the wirecutting machine in the area created more noise than the radios did and reminded the supervisors of the company's unfulfilled promise to remove the noisy machines months before. Cheek answered that the machine was Company property.

Denaple's complaints on behalf of the other employees[4] apparently annoyed the supervisors. After the meeting they discussed the possibility of issuing a written warning to her for speaking out.

Later that day, Denaple returned to her work station from a washroom, laughing about a joke she had heard. Cash became irritated because Denaple's laughter interfered with her ability to carry on business over the telephone, even though Cash was thirty to forty feet away. Cash asked Associate Supervisor Tim Franklin to quiet Denaple. When Franklin asked Denaple to stop laughing, she said that she would as soon as she could. He then reported the incident to Production Manager Gawain Elliott, but by the time Elliott appeared on the scene, Denaple had stopped laughing.

The supervisors apparently deemed the laughing matter a serious offense, however, and met to discuss appropriate sanctions. Franklin, Cash, Elliott, and Employee Relations Representative David Magee discussed the offending employee's work record and the excessive mirth incident. The group decided to issue a written warning for the disruptive merriment, and when Denaple received the warning one of the supervisors also discussed Denaple's confrontation with Cheek during the employees' meeting. Later, in several of the supervisors' meetings, both the confrontation and the laughing incident came up for discussion. On January 28, 1985, Rockwell issued a written warning to Denaple for "allowing excessive laughing to disrupt work group on January 25."

On February 1, 1985, Rockwell promoted Wanda Saed to Manager of Employee Relations. Shortly after assuming her new position, Saed discharged six employees after

---

**2.** The ALJ found that Cash threatened Denaple, even though he discounted the credibility of both of these witnesses. Denaple had asserted that there were two different threats, one in October 1984 and the other in late November 1984. The ALJ concluded there was only one, and that the confrontation occurred on September 25, 1984. He supported this conclusion by relying on Cash's note dated September 25 in Denaple's personnel file that rebuked Denaple for "excessive talking and behavior." 278 N.L.R.B. No. 13 at 16. Rockwell argues that the ALJ's conclusion was improper because he based it in part on Denaple's discredited testimony and because it was speculative. The ALJ, however, is free to believe some testimony, without believing the witness' whole story. *See NLRB v. Downslope, Inc.,* 676 F.2d 1114, 1116 (6th Cir.1982). Also, we accord special deference to an ALJ's credibility findings. *NLRB v. Norbar, Inc.,* 752 F.2d 235, 239 (6th Cir.1985).

Here the ALJ properly weighed the credibility of the witnesses in his findings of fact. Therefore, we reject Rockwell's arguments and accept the ALJ's finding.

Because we accept the ALJ's conclusion that the confrontation occurred on September 25, we also reject Rockwell's argument that the threat fell outside the six-month limitations period of section 10(b) of the Act. 29 U.S.C. § 160(b). The unfair labor practice charge was filed March 15, 1985 and the section 10(b) period began on September 16, 1984. 278 N.L.R.B. No. 13 at 3. Thus, the threat that occurred September 25 was within the limitations period.

**3.** The Company allows employees to listen to radios, but requires them to use earphones.

**4.** The ALJ noted that Cash admitted that Denaple spoke on behalf of the other employees at the meeting.

urinalysis tests indicated they had used drugs. After the tests, but prior to the discharges, one of the tested employees asked Denaple if the Union could help him if he was fired. Denaple agreed to find out.

On February 7, Saed discharged the six employees and then proceeded to meet with her supervisors to inform them of her action. Saed acknowledged that the Company was concerned about adverse employee response to the discharges.

That morning Denaple spoke to another employee, a friend of one of the six dismissed employees. He told her about the discharges. As they spoke, Elliott appeared and cautioned Denaple that she was already in enough trouble and that she should return to her station. Denaple complained that the dismissals were unfair and asked if all employees would undergo drug testing.

Somewhat later that day, Denaple asked Cash for permission to leave work early. She said she had to attend a job interview and to take care of some other personal business. Cash indicated that Denaple had missed too much work to take the time off, but when she checked the attendance record she noted that Denaple's record had improved. Although Cash said that Denaple would not be fired for leaving, she did not grant Denaple's request. Denaple told Cash she was leaving and left the premises.

This new incident caused further consternation among the supervisory group. Shortly after Denaple's departure, Cash, Elliott, and Magee convened to discuss more disciplinary action. During the meeting, Magee called Saed who told the group to terminate Denaple.

On February 8, Cash, Elliott, and Magee met with Denaple to inform her that she was being fired. When Denaple asked the reasons for the decision, Elliott told her "work-related behavior and attendance." She inquired if leaving the day before had caused the dismissal and then reminded Cash of her assurance to the contrary. Elliott denied that her departure prompted the decision and simply stated overall attendance was the problem. Magee threw her personnel file on the table and said that Rockwell had had enough.

## II

*Proceedings*

On March 15, 1985, the Union filed an unfair labor practice charge against Rockwell. The Regional Director for Region 10 issued a complaint on April 19, 1985. The complaint alleged that Rockwell had committed unfair labor practices in violation of sections 8(a)(1) and (3) of the Act.

The administrative law judge (ALJ) found that Cash had threatened Denaple with reprisals for union involvement. This constituted a section 8(a)(1) unfair labor practice. The ALJ also found that Rockwell issued a written warning and fired her as a result of her protected, concerted activities. These actions also violated section 8(a)(1).

The ALJ then recommended reinstatement and backpay for Denaple, along with other remedial measures. Rockwell filed exceptions to the ALJ's opinion, but the Board issued an order adopting the ALJ's opinion and recommendations. The Board now petitions for enforcement of that order. Rockwell opposes enforcement on a number of grounds.

## III

*Discussion*

On review, we sustain the Board's factual findings when substantial evidence on the record as a whole supports those findings. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–91, 71 S.Ct. 456, 463–66, 95 L.Ed. 456 (1951); *NLRB v. Malta Const. Co.*, 806 F.2d 1009, 1010 (11th Cir.1986). In addition, we defer to the Board's interpretation of the National Labor Relations Act if it is reasonably defensible. *See NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 829, 104 S.Ct. 1505, 1510, 79 L.Ed.2d 839 (1984); *NLRB v. International Union of Operating Engineers, Local 501, AFL–CIO*, 806 F.2d 1405, 1407 (9th Cir.1986).

Rockwell raises a number of issues on appeal. First, the Company asserts that

the ALJ violated due process by "basing his decision on a novel issue": protected, concerted activity under section 8(a)(1). The Company contends that the ALJ inserted the protected, concerted activity issue into the case *sua sponte*. We find no merit in this argument. In the complaint, Rockwell received notice that the claims against it included unfair labor practices under section 8(a)(1). In paragraph 12 of the complaint, General Counsel asserted that Denaple's dismissal resulted from her "concerted activities with other employees for the purposes of collective bargaining and other mutual aid and protection." Concerted activity, therefore, was not a new theory concocted by the ALJ. Due process provides no basis for disturbing the Board's findings in this case.[5]

Next, Rockwell challenges all of the Board's findings as not supported by substantial evidence. The Board found that three different acts of the Company constituted unfair labor practices under section 8(a)(1).

■ Section 8(a)(1) of the Act makes it unlawful "to interfere with, restrain, or coerce employees in the exercise" of their rights under section 7 of the Act. 29 U.S.C. § 158(a)(1). Section 7 guarantees employees "the right to self-organization, to form, join, or assist labor organizations," and "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. An employer violates section 8(a)(1) when its conduct tends to be coercive. *NLRB v. Brewton Fashions, Inc., a Div. of Judy Bond,* 682 F.2d 918, 921 (11th Cir. 1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983). Actual coercion is not necessary. To determine whether the conduct tended to be coercive, we consider all surrounding circumstances. *Mead Corp. v. NLRB,* 697 F.2d 1013, 1025 (11th Cir.1983). To address Rockwell's challenges, we will examine each of the Board's findings.

## A. *Threatened reprisals*

■ When an employer threatens an employee with dismissal, demotion, or other reprisals for union activities, such action clearly violates section 8(a)(1). *Mead Corp.,* 697 F.2d at 1025. The ALJ found that Cash told Denaple that union involvement would hurt her work record. This statement alone from a supervisor to an employee qualifies as a threat of economic reprisal. This is a classic threat. Substantial evidence supports the Board's finding that Cash's statement violated section 8(a)(1).

## B. *Written warning and discharge*

■ The Board also found that Rockwell issued the written disciplinary notice and ultimately discharged Denaple because of her protected, concerted activities on behalf of other employees. To fall within section 7's "concerted activity," the employee must act "with or on the authority of other employees, and not solely by and on behalf of the employee himself." *Meyers Industries, Inc.,* 281 N.L.R.B. No. 118 at 11 (1986) (quoting *Meyers Industries, Inc.,* 268 N.L.R.B. 493 (1984)).

The Board found that two of Denaple's acts fell within section 7's protections as concerted activities: her confrontation with the supervisors at the employees' meeting and her complaint about the dismissals of the six drug-tested employees.

During the employees' meeting, Cheek lectured employees about the volume of the radio headsets. Denaple objected, saying she did not believe that employees played the radios loud enough for others to hear. She also asked about the promised removal of a noisy machine. The Board found that this was protected, concerted activity that precipitated the written warning Rockwell issued to Denaple.

Rockwell contends first that Denaple's comments at the meeting do not qualify as protected, concerted activity. Second, Rockwell argues that it was the laughing

---

**5.** Rockwell also contends that the Board failed to address its due process argument. Considering the lack of basis for this argument, we see no reason for the Board to have wasted time on it, as we have here. In fact, we are surprised at Rockwell's insistence on this point. Rockwell's brief asserts that the complaint does not address this claim, when the complaint clearly does.

incident rather than those comments that led to the warning.

■ Purely personal griping does not fall within the scope of protected, concerted activity. For example, in *NLRB v. Deauville Hotel*, 751 F.2d 1562, 1565 (11th Cir. 1985), this court held an employee's complaints about a new, lower-ranking job he had been assigned were not protected, concerted activity. In the present case, however, Denaple's concerns were obviously group concerns. In fact, the Company had called the employees together to discuss the group issue of noise from the radios. This was not an issue limited to a single employee. The ALJ found that Cash acknowledged Denaple spoke on behalf of all employees.[6] Thus, Denaple's actions differ from the purely personal complaints of the employee in *Deauville.*

■ In its recent concerted activity decision, *Meyers Industries, Inc.*, 281 N.L.R.B. No. 118 (1986) (*Meyers II*),[7] the Board acknowledged that acts of a single employee could constitute concerted activity. *Id.* at 11. When an individual, not designated as spokesperson, brings a group complaint to management's attention, the question of whether that activity is concerted must be determined on the totality of the evidence.[8] *See id.* at 13, 16 (*Meyers I* standard not exhaustive—must scrutinize facts case-by-case). In the present case, the evidence supports the findings of the ALJ and the Board that Denaple engaged in protected, concerted activity. Denaple voiced a concern common to the employees in the group meeting: radio playing and noise in the workplace. While her speech was not "specifically authorized," the group was more than generally aware of her actions, since they were present at the meeting. The employer knew Denaple spoke on behalf of the group.

In addition, the ALJ did not credit Rockwell's "excessive laughter" rationale for the written warning, based in part on his credibility findings.[9] Even absent credibility observations, we find the laughing incident a thinly-disguised pretext for disciplining Denaple for concerted activity. Several of the supervisors admitted that they discussed the employee meeting confrontation when they were deciding whether to issue the written disciplinary notice. The totality of the circumstances supports the Board's finding that Rockwell's written warning violated section 8(a)(1).

■ Substantial evidence also supports the Board's finding that the discharge of Denaple violated section 8(a)(1). Rockwell attacks this finding on several grounds. First, it asserts that Denaple's protest over the drug-related discharges did not cause her dismissal. Instead, the Company contends that Denaple's absenteeism and general disruptive conduct led it to fire her. Moreover, the Company argues that even if Denaple's protests played a role in her termination, those protests were not protect-

---

**6.** Rockwell denies that Cash conceded this point. However, the record supports the ALJ's conclusion:

> Q: Okay, and during that meeting Kathy spoke up and said well I don't think our radios are really too loud, and we should be allowed to use our radios right?
> A [Cash]: She sure did.
> Q: Okay, she wasn't talking about her own radio, she was talking about everybody's radio, right?
> A: She said that she didn't see anything wrong with people having earphones turned as loud as they could go.

Record at 456.

**7.** The previous incarnations of this case may be found as follows: *Meyers Industries, Inc.*, 268 N.L.R.B. 493 (1984) (*Meyers I*), remanded, *Prill v. NLRB*, 755 F.2d 941 (D.C.Cir.), *cert. denied,* ―― U.S. ――, 106 S.Ct. 313, 88 L.Ed.2d 294 (1985). The case involved an employee-truck-driver named Prill who complained about the defective condition of his truck. A co-employee also complained of the truck's safety defects to management. The Board concluded in both *Meyers I* and *Meyers II* that Prill's discharge was lawful because the complaints were not concerted.

**8.** In *Meyers I,* the Board identified four factors to establish 8(a)(1) violations:

> (1) the activity must be concerted;
> (2) the employer knows the activity is concerted;
> (3) the activity is protected; and
> (4) the adverse employment action was motivated by the protected, concerted activity.

268 N.L.R.B. 493, 497.

**9.** The ALJ did not credit the testimony of David Magee, Rockwell's employee relations representative.

ed, concerted activity. We agree with the Board, however, that Denaple's protests were protected, concerted activities. We also concur with the Board's finding that the other reasons offered for her dismissal were pretextual.

Denaple's activities revolved around the group concern over the urinalysis testing and subsequent discharges. Rockwell's supervisors acknowledged that the drug-related dismissals were a source of consternation for the employees at the plant. Also, Denaple's activities were concerted. One of the dismissed employees had asked her for union assistance. Another employee had discussed the situation with her, and she voiced her concerns in the presence of that employee. Opposition to the drug testing and the discharges was protected activity within the meaning of section 7. *See Eastex, Inc. v. NLRB*, 437 U.S. 556, 563–68, 567 n. 17, 98 S.Ct. 2505, 2511–14, 2513 n. 17, 57 L.Ed.2d 428 (1978) (section 7 liberally construed to protect broad range of employee concerns); *Brown & Root, Inc. v. NLRB*, 634 F.2d 816, 818 (5th Cir. 1981) (section 7 protects activities reasonably expected to affect conditions of employment). Thus, Denaple's protests were protected, concerted activity.

With respect to Rockwell's claim that it did not discharge Denaple for her protests, but for other work-related behavior, the Board applied a *Wright Line* test [10] and held that Rockwell's asserted reasons were pretextual. Under *Wright Line* when an employee's protected activity was a motivating factor for the employer's adverse action, the employer must then demonstrate that it would have taken the action even absent the protected conduct. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 400–03, 103 S.Ct. 2469, 2473–75, 76 L.Ed.2d 667 (1983).

Here General Counsel established a prima facie case of unlawful motivation for the discharge. Rockwell terminated Denaple's employment the day after her protest over the drug-related dismissals and within two weeks of her confrontation over the

radio playing. Also, the Company had previously threatened her with reprisals for union activity. When Denaple exclaimed that the dismissals of the six employees were unfair, Elliott told her that she was "already in enough trouble" and reported to Saed that Denaple had been disruptive over the discharges. Saed made the decision to terminate Denaple the next day.

Rockwell failed to rebut the prima facie case of unlawful motivation. While the Company now conjures up a raft of incidents to justify Denaple's discharge, the supervisor who decided to terminate Denaple did not even review Denaple's personnel file. Thus, the personnel file full of "incidents" merely furnishes *post hoc* justification for a decision made on unlawful bases. Further, the personnel file itself refutes Rockwell's claims that Denaple's work-related behavior was poor. The evaluations in the file rated Denaple's work-related behavior as "good" or "satisfactory." We find substantial evidence to support the Board's finding on this issue, as well. The record supports the finding that Rockwell's true motivation for firing Denaple was that she was "disruptive" over issues of common concern to employees. The evidence indicates that Rockwell discharged Denaple because of her protected, concerted activities.

For the foregoing reasons, we ENFORCE the Board's order.

10. In *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), the Supreme Court approved the Board's test for determining motivation. *Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), *enforced on other grounds*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).